**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA**

NANCY SHER, JAMES R. ABEL, JENNIFER A. BAKER
CAROL A. CALECA, JOURA FINK,
LOUIS GIOCONDO, BETTY L. KEY, individually, and
on behalf of all others similarly situated,

      Plaintiffs,

                                   CLASS REPRESENTATION
                                   Case No.: 08-005332-CI

vs

RAYTHEON COMPANY; CRAIG
PETHE

      Defendants.

_____/

## AMENDED COMPLAINT

      COMES NOW Plaintiffs, NANCY SHER, JAMES R. ABEL, JENNIFER A.

BAKER, CAROL A. CALECA, JOURA L. FINK, LOUIS GIOCONDO and BETTY L,

KEY by and through their undersigned attorneys, on behalf of themselves and all others

similarly situated, file this action against Defendants RAYTHEON COMPANY, a

Massachusetts corporation authorized to do business in the state of Florida (hereinafter

"Raytheon"); CRAIG PETHE, a citizen of the state of Florida (hereinafter "PETHE"),

and allege as follows:

## GENERAL ALLEGATIONS

      1.     For over twenty years, Raytheon and their predecessors have known that

their operations and waste management practices were damaging the environment. These

defendants consciously elected to derive and wrongfully retain tremendous economic benefit by refusing to control, contain or remediate the hazardous constituents resulting from their operations.

2.      In an effort to limit their liability and their expense associated with government efforts to contain or minimize the extent of contamination, Defendants have engaged in a conspiracy to perpetrate a fraud on the public, which included making material misrepresentations regarding the character of their operations, the extent and nature of the contamination migrating from their facility and their remediation efforts. By their acts, the defendants allowed the pollution to worsen as the fraud continued at the expense of the health and wellbeing of the unknowing public.

3.      The plaintiffs' properties and private wells have been used by Defendants for over ten years as a de facto storage facility for hazardous wastes. In exchange, these defendants have paid the relatively minimal cost of a public relations campaign and various illegitimate "studies" while the public continued to bear the true cost of Defendants' intentional and reckless acts.

4.      This de facto storage facility lacks suitable siting and the extensive safeguards which are required of a permitted facility containing constituents of this nature and volume.

5.      Defendants have knowingly or recklessly created a plume of contamination, which extends thousands of feet from the defendants' property and under and onto plaintiffs' properties.

6.      This plume of contamination continues to migrate off Defendant's property and into the surrounding properties in an uncontrolled manner.

2

7.     This plume of contamination contains such hazardous constituents as dioxane, trichlorethene, dichlorethene, and vinyl chloride. These constituents cause cancer, birth defects and other illnesses.

8.     Defendants herein have misled the public by asserting that the contaminants from their facilities have been properly contained and addressed.

9.     All defendants herein have misled the public by asserting that the contaminants from their facility has not resulted in risk to human health and the environment.

10.     All defendants herein have misled the public by fraudulently, negligently and/or knowingly suppressing the nature and extent of the contamination which has migrated off their property.

## JURISDICTION AND VENUE

11.     This is an action for damages which exceed fifteen thousand dollars ($15,000.00).

12.     Venue in this judicial district is proper under Florida Statute, § 47.051 because the properties at issue in this action are in Pinellas County, Florida.

## THE PARTIES

13.     Plaintiffs own properties in the City of St. Petersburg, Pinellas County, Florida, which they maintain for residential or commercial use.

14.     Plaintiff NANCY SHER owns and resides at the property located at 1127 Russell Drive in St. Petersburg, Florida. She owns an operational groundwater well which has been used for irrigation.

15.     Plaintiff JIM R. ABEL owns and resides at the property located at 7325 12th Ave North, in St. Petersburg, Florida. He owns an operational groundwater well which has been used for irrigation.

16.     Plaintiff JENNIFER A. BAKER owns and resides at the property located at 7728 22nd Ave North, in St. Petersburg, Florida. She owns an operational groundwater well which has been used for irrigation, cleaning and recreation, including, but not limited to using the well water to fill a child's swimming pool.

17.     Plaintiff CAROL A. CALECA owns and resides at the property located at 7335 10th Avenue North, in St. Petersburg, Florida. She owns an operational groundwater well which has been used for irrigation and her child and other children have played the water produced through the sprinkler system.

18.     Plaintiff JOURA L. FINK owns and resides at the property located at 1510 Robinson Drive North, in St. Petersburg, Florida. She owns an operational groundwater well which has been used for irrigation, cleaning, recreation, bathing pets and for the filling of a child's swimming pool.

19.     Plaintiff LOUIS GIOCONDO owns and resides at 6945 11th Avenue North, in St. Petersburg, Florida. He does not own an operational groundwater well. 19..

20.     Plaintiff BETTY L. KEY owns and resides at the Seventieth Somerset Place Condominiums l located at 1370 70th Street North, in St. Petersburg, Florida. The Seventieth Somerset Place Condominiums owns an operational groundwater well that is used for irrigation.

21.     Defendant Raytheon Company is a corporation organized under the laws of Massachusetts, and authorized to do business in the State of Florida.

22.     Defendant CRAIG PETHE is or was during times material hereto an environmental engineer at the Raytheon Facility, responsible for environmental management at the facility and resident of Pinellas County, Florida.

## BACKGROUND FACTS

23.     Raytheon owns and operates an industrial facility in St. Petersburg, Florida. Defendants operated their facility in a manner that caused significant contamination of the groundwater on, under, and around their facility. The groundwater contamination resulting from defendants' operations is spreading extensively and has resulted in a plume of uncontrolled contamination which flows on, under, towards and around plaintiffs' properties.

24.     Raytheon's facility is located at 1501 72nd Street North, St. Petersburg, Pinellas County, Florida (hereinafter the "Raytheon Facility"). The facility consists of three connected buildings with a total area of approximately 500,000 square feet. There are approximately 1300 employees currently working at the facility.

25     The facility property was developed for Futronics Toy Company prior to 1957. The property was sold to Air Associates, also known as Electronics Communications, Inc. ("ECI") in October 1957. In 1974, E-Systems, Inc., acquired the ECI Company. E-Systems was purchased by Raytheon in 1996. Through the mergers, Raytheon has assumed all responsibility and liability for the prior activities of ECI and E-Systems, Inc.

26.     The facility was originally constructed in the 1950s and used primarily as an electronics manufacturing facility. Building expansions were conducted at the facility in 1959, 1962, 1966, 1969 and 1985.

27.     The primary activity at the facility since October 1957 has been the manufacture of electronics, communication hardware, and defense electronics. Activities at the facility have included, but not limited to, electronics assembly, hand and mass soldering, vapor degreasing, coating, painting, chrome conversion, electroplating, metal finishing, photo-imaging, environmental product testing, photographics, machining, electronics engineering, and laboratory functions. Several of these activities result in the creation of hazardous waste materials.

28.     When Raytheon obtained title to the Raytheon Facility through its acquisition of E-System, Inc., it knew or should have known that its operations had contaminated the groundwater used by local residents. Yet, Raytheon did nothing to abate the contamination. Instead, it continued to operate the Raytheon facility in substantially the same manner, compounding any pre-existing damage from contamination and adding further to the contamination by their operations at the facility.

29.     Defendants have known since at least 1991 of the presence of off-site soil and groundwater contamination. At that time it was also known that the groundwater contamination was migrating in a southern direction in the direct path of hundreds of residential properties.

30.     In at least as early as April of 2001, the Florida Department of Environmental Protection identified prior disposal practices at the facility as the source of a large plume of groundwater contaminated with trichloroethylene.

31.     All defendants had the opportunity, at greater cost, to better control, contain and dispose of their hazardous wastes, but elected to not spend that money.

32.     Raytheon hired and tasked contractors with minimizing the perception of the risks to human health and the environment from the hazardous waste, particularly the wastes that have migrated and continue to migrate off-site.

33.     The contractors manipulated data and their investigation in order to provide justification for Raytheon's conscious economic business decision to "study" and delay rather than adequately address the conditions they had created and allowed to remain and continually worsen.

34.     Raytheon, with the support of the contractors, placed their short-term economic interest over their duties to its neighbors and the public interest.

35.     The contractors joined this scheme in return for compensation and intentionally assisted Raytheon in their scheme to defraud their neighbors and the public.

36.     The plume of groundwater contamination extends into the surrounding neighborhoods, including those adjacent to the facility and beyond, intruding on, under, and around the properties where plaintiffs reside and run their businesses. The plume will eventually discharge into Boca Ciega Bay, which is a sensitive saltwater body in the heart of St. Petersburg, Florida.

37.     The contaminants in the groundwater plume created by operations at the Raytheon Facility include elevated levels of dioxane, trichlorethene, dichlorethene, and vinyl chloride.

38.     Exposure to Trichloroethylene ("TCE") can cause several serious health and disease impacts, including, but not limited to, headaches, lung irritation, dizziness,

nausea, poor coordination, impaired heart function, unconsciousness, impaired fetal development in pregnant women, nerve damage, kidney damage, liver damage, cancer, and death.

39.   Exposure to vinyl chloride can cause several serious health and disease impacts, including, but not limited to, unconsciousness, liver cancer, brain cancer, lung cancer, cancers of the blood, and death.

40.   Exposure to dioxane can cause several serious health and disease impacts, including, but not limited to, liver damage, kidney damage, fatigue, eye irritation, nose irritation, liver cancer, nasal cancer, and death.

41.   Defendants have knowingly and intentionally chosen not to remove the toxic chemicals from the environment although defendants are aware that the toxic chemicals continue to invade plaintiffs' properties.

42.   The continuing migration on, under and around the plaintiffs' properties of the groundwater contamination caused by defendants' actions and operations has impaired plaintiffs' ability to install and/or use irrigation wells on their properties, thereby permanently impairing the value of plaintiffs' land.

43.   The contamination caused by defendants' actions and operations has diminished the value of plaintiffs' properties and has impaired plaintiffs' ability to sell said properties.

44.   The presence of defendants' contaminants on, under or near plaintiffs' properties has resulted in a devaluation of plaintiffs' properties due to the potential cleanup liability attached to the properties.

45.    The presence of defendants' contaminants on, under or nearplaintiffs' properties has resulted in a devaluation of plaintiffs' properties due to the potential health risks associated with the contamination on, under, or around the properties.

46.    As late as April 2008, Raytheon continues their campaign of misinformation by way of press releases replete with half-truths, misrepresentations and incomplete answers and explanations designed to diminish the true nature and extent of the contamination cause by their acts.

## CLASS REPRESENTATION ALLEGATIONS

47.    Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of the proposed plaintiffs' class. The proposed class is initially defined as: those who currently own, or who on or after April 1, 2008, have owned private real property located 1) at, on, or adjacent to the Raytheon Facility; 2) in the area north, south, east and west of the Raytheon Facility bordered by 26th Avenue North and 22nd Ave North to the north, 66th Street North to the east, South Central Avenue to the south and Boca Ciega Bay to the west; and those who currently reside, or who at any time in the past have resided 1) at, on, or adjacent to the Raytheon Facility; 2) in the area north, south, east and west of the Raytheon Facility bordered 26th Avenue and 22nd Ave North to the north, 66th Street North to the east, South Central Avenue to the south and Boca Ciega Bay to the west. A map of the initial class area is attached as Exhibit A. Excluded from the class are the defendants in this action, any entity in which the defendants have a controlling interest, any employees, officers, or directors of defendants, and the legal representatives, heirs, successors, and assigns of defendants.

48.    This action has been brought and may properly be maintained pursuant to the provisions of Florida Rules of Civil Procedure 1.220(b)(1)(A), 1.220(b)(1)(B), 1.220(b)(2), and 1.220(b)(3) and case law thereunder.

49.    Existence and Predominance of Common Questions of Fact and Law – Fla. R. Civ. P. 1.220(c)(2)(B): Common questions of fact and law predominate over the questions affecting only individual class members. These common factual and legal questions include:

    a.    Whether, and to what extent, defendants are responsible for the plume of contamination flowing on, under and around plaintiffs' properties.

    b.    Whether, and to what extent, the actions and operations of defendants have resulted in a trespass on plaintiffs' properties.

    c.    Whether, and to what extent, the actions and operations of defendants have annoyed and disturbed the free use, possession and enjoyment of the plaintiffs' properties so as to constitute a private nuisance.

    d.    Whether, and to what extent, defendants have fraudulently suppressed material facts and information which should have been provided to plaintiffs.

    e.    Whether defendants engaged in abnormally dangerous activities for which they are strictly liable.

    f.    Whether plaintiffs and other class members were injured by defendants' actions and operations and, if so, the appropriate class-wide measure of damages.

g.    Whether plaintiffs and other class members are entitled to medical monitoring relief.

50.    Typicality – Fla. R. Civ. P. 1.220(c)(2)(C): Plaintiffs' claims are typical of the claims of the class because plaintiffs and all class members are owners of property on, under and around which the plume of contamination caused by defendants have traveled. The plaintiffs' claims arise form the same practices or course of conduct that gave rise to the claims of all other class members, and the claims are based on the same legal theories.

51.    Numerosity of the class – Fla. R. Civ. P. 1.220(c)(2)(D)(i): The members of the class are so numerous that separate joinder of each member is impracticable. Upon information and belief, the number of members exceeds one thousand members. Class members may be notified of the pendency of this action by regular mail, supplemented (if deemed necessary and appropriate by the Court) by published notice.

52.    Adequacy – Fla. R. Civ. P. 1.220(c)(2)(D)(iii): Plaintiffs are adequate representatives of the class because their interest does not conflict with the interests of the members of the class they seek to represent. The plaintiffs adequately and truly represent the interests of the absent class members. Plaintiffs and all members of the class they seek to represent are owners of property damaged by reason of the defendants' conduct. The interests of the plaintiffs are coextensive with the interests of the other members of the class, with common rights of recovery based on the same essential facts. Plaintiffs have retained counsel competent and experienced in complex class action litigation and plaintiffs intend to prosecute this action vigorously. The interests of members of the class will be fairly and adequately protected by plaintiffs and their counsel.

53.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, there is no interest by members of the class in individually controlling the prosecution of separate actions, the expense of prosecuting individual claims is prohibitive in light of the typical claimant's injury, neither the plaintiffs nor members of the proposed class have filed or are parties to any litigation wherein the legal and factual issues raised herein are to be adjudicated, and it is desirable to concentrate the litigation of the claims made herein in a single proceeding in order to provide claimants with a forum in which to seek redress. Whatever difficulties may exist in the management of the class action will be greatly outweighed by the class action procedure, including but not limited to providing claimants with a method for the redress of claims that may not otherwise warrant individual litigation.

54.   The prosecution of separate claims by individual members of the class creates a risk that adjudication concerning individual members of the class would, as a practical matter, be dispositive of, or substantially impair or impede, the ability of other members of the class not parties to this action to protect their interests. If plaintiffs are forced to pursue this action in an individual capacity, the court is likely to make legal rulings that will be dispositive of the claims of members of the proposed class not parties herein. Additionally, if the plaintiffs prevail, the relief they obtain may impair or impede the ability of defendants to provide relief to members of the proposed class not parties herein.

55.   Defendants have acted on grounds generally applicable to all members of the proposed class (discharging toxic and hazardous chemicals which have or will

trespass plaintiffs' property) making final declaratory and injunctive relief concerning the class as a whole appropriate.

## COUNT I

## TRESPASS

56.   Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 55 above as if fully restated herein.

57.   At all times mentioned in this complaint, plaintiffs are 1) the owners; 2) in possession; or 3) acquired a right of action by assignment from their grantors against the trespasser of certain real property within the City of St. Petersburg, Pinellas County, Florida, as more particularly described above.

58.   The continuing migration on, under, and around plaintiffs' property of groundwater contamination caused by defendants' actions and operations has resulted in a trespass to plaintiffs' property for which defendants are responsible.

59.   The presence of the hazardous and toxic constituents on plaintiffs' property is unauthorized.

60.   Defendants have not sought nor obtained plaintiffs' consent to store its hazardous substances and waste on plaintiffs' properties.

61.   By reason of the trespass, plaintiffs are entitled to recover damages for the following, including, but not limited to: 1) the loss of use and enjoyment of property; 2) the loss of use of the groundwater; 3) the diminution of value of property; 4) restoration costs; 5) consequential and incidental damages; 6) disgorgement of profits realized; and 7) unjust enrichment.

13

62.     WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiffs demand trial by jury on all issues so triable.

## COUNT II

### PRIVATE NUISANCE

63.     Plaintiffs incorporate herein by reference the allegations set for in paragraphs 1 through 55 above as if fully restated herein.

64.     At all times mentioned in this complaint, plaintiffs were or still are 1) the owners; 2) in possession; or 3) acquired a right of action by assignment from his or her grantor against the trespasser of certain real property within the City of St. Petersburg, Pinellas County, Florida, as more particularly described above.

65.     Defendants' actions in causing and continuing to allow the migration of groundwater on, under and around plaintiffs' properties has invaded the plaintiffs' interest in the private use and enjoyment of their land thereby resulting in a private nuisance for which defendants are responsible.

66.     As a result of defendants' actions, plaintiffs have suffered annoyance, inconvenience and discomfort arising from the nuisance created by defendants.

67.     By reason of the nuisance, plaintiffs are entitled to recover damages for the following, including, but not limited to: 1) the loss of use and enjoyment of property; 2) the loss of use of the groundwater; 3) the diminution of value of property; 4) restoration costs; 5) consequential and incidental damages; 6) disgorgement of profits realized; and 7) unjust enrichment.

68.     WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiffs demand trial by jury on all issues so triable.

## COUNT III

## UNJUST ENRICHMENT

69.     Plaintiffs incorporate herein by reference the allegations set for in paragraphs 1 through 55 above as if fully restated herein.

70.     Defendants have been enriched by their acts and omissions which allowed hazardous constituents to be placed on and under plaintiffs' property.

71.     These acts and omissions allowed defendants to save millions of dollars in costs they should have expended in order to properly contain and control the substances emanating from their facility.

72.     The contractors were enriched by payment for services which did not rise to the standards expected of their profession and trade.

73.     Plaintiffs have suffered diminished property values, the inability to sell their homes and other monetary damages due to defendants' acts and omissions as alleged herein.

74.     Defendants lack any legal justification for permitting their hazardous wastes to leave their property and enter plaintiffs' property at plaintiffs' expense.

75.     Defendants lack any legal justification for allowing their hazardous wastes to remain on and under plaintiffs' property at plaintiffs' expense.

15

76.    Under the circumstances described herein it would be inequitable for the defendants to retain the benefits of their actions without paying the value thereof to plaintiffs.

77.    No other remedy at law can adequately compensate plaintiffs for the damages occasioned by defendants' conscious choice to store hazardous materials on and under plaintiffs' properties in order to save the expenses of properly controlling and containing such materials.

78.    By reason of the defendants' conduct, plaintiffs are entitled to recover damages for the following, including, but not limited to: 1) the loss of use and enjoyment of property; 2) the loss of use of the groundwater; 3) the diminution of value of property; 4) restoration costs; 5) consequential and incidental damages; 6) disgorgement of profits realized; and 7) unjust enrichment.

79.    WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiffs demand trial by jury on all issues so triable.

**COUNT IV**

**STRICT LIABILITY**

80.    Plaintiffs incorporate herein by reference the allegations set for in paragraphs 1 through 55 above as if fully restated herein.

81.    Defendants, as the owners and/or operators of the facility described above, were engaging in abnormally dangerous activities by the manner in which they used, stored, treated and disposed of hazardous substances at the facility. Defendants' activities

16

resulted in the intentional, incidental or accidental release of hazardous substances into the groundwater at their facility, which (a) created a high degree of risk of harm to others, and particularly to plaintiffs, whose property has been impacted by the migrating contamination; (b) created a risk involving a likelihood that the harm threatened by defendants' activities would be great; (c) created a risk of harm that could not be eliminated by the exercise of reasonable care; (d) were not a matter of common usage; and (e) were inappropriate to the place that there were being carried on, in that they constituted a non-natural use of defendants' land which imposed and unusual and extraordinary risk of harm to plaintiffs' properties as well as to other property in the vicinity.

82    As a direct and proximate result of defendants' conduct in engaging in the abnormally dangerous activities alleged above, hazardous wastes and otherwise harmful hazardous substances used and stored at defendants' facility have and continue to escape, leak and seep on, under and around plaintiffs' properties. The harm sustained by plaintiffs is exactly the kind of harm posed, the possibility of which made defendants' activities abnormally dangerous.

83.    By reason of the defendants' conduct, plaintiffs are entitled to recover damages for the following, including, but not limited to: 1) the loss of use and enjoyment of property; 2) the loss of use of the groundwater; 3) the diminution of value of property; 4) restoration costs; 5) consequential and incidental damages; 6) disgorgement of profits realized; and 7) unjust enrichment.

84.    WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for damages in a sum within the jurisdictional limits of this court, together

17

with costs of suit, and such further relief as the court deems proper. Plaintiffs demand trial by jury on all issues so triable.

## COUNT V

## NEGLIGENCE

85.    Plaintiffs incorporate herein by reference the allegations set for in paragraphs 1 through 55 above as if fully restated herein.

86.    Defendants owed a duty of reasonable care to plaintiffs in the operation and maintenance of the Raytheon Facility.

87.    Defendants breached this duty by: (1) discharging hazardous substances into the groundwater at their facility and allowing the contamination resulting therefrom to spread on, under and around plaintiffs' property; (2) failing to adequately warn the plaintiffs of the nature and extent of contamination; and (3) failing to warn the plaintiffs that such contaminants would travel on, under and around the plaintiffs' property.

88.    As a result of this breach, and as a direct and proximate result of defendants negligence or willfulness, plaintiffs have been deprived of the use and benefit of their property.

89.    By reason of the defendants' conduct, plaintiffs are entitled to recover damages for the following, including, but not limited to: 1) the loss of use and enjoyment of property; 2) the loss of use of the groundwater; 3) the diminution of value of property; 4) restoration costs; 5) consequential and incidental damages; 6) disgorgement of profits realized; and 7) unjust enrichment.

90.    WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for damages in a sum within the jurisdictional limits of this court, together

18

with costs of suit, and such further relief as the court deems proper. Plaintiffs demand trial by jury on all issues so triable.

## COUNT VI

## MEDICAL MONITORING

91.    Plaintiffs incorporate herein by reference the allegations set for in paragraphs 1 through 55 above as if fully restated herein.

92.    Plaintiffs and others similarly situated have been and will be significantly exposed relative to the general population to proven hazardous substances, including, but not limited to, dioxane, vinyl chloride and TCE, through the negligent conduct of Defendants at and in relation to the Raytheon facility.

93.    As a proximate result of the exposure, Plaintiffs and others similarly situated have suffered a significant increased risk of contracting serious latent disease(s) which makes it reasonably necessary for them to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of exposure.

94.    Monitoring procedures exists that make the early detection of disease possible and the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

95.    Plaintiffs have no adequate remedy at law, and the establishment of a court-supervised medical monitoring fund is reasonably necessary and highly appropriate to pay for medical monitoring. Wherefore, Plaintiffs, on behalf of themselves and others similarly situated, demand that they be awarded damages together with equitable relief.

96.    WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for damages in a sum within the jurisdictional limits of this court, together

with costs of suit, and such further relief as the court deems proper. Plaintiffs demand trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 8th day of May, 2008.

LEVIN PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, P.A.

J. Michael Papantonio
Florida Bar. No.:335924
Brian H. Barr
Florida Bar No.:0493041
Neil E. McWilliams, Jr.
Florida Bar. No.:0016174
Amanda R. Slevinki
Florida Bar No.:0027041

And

MORGAN & MORGAN, P.A.
Keith M. Carter
Clay Townsend
7th Floor - One Tampa City Center
201 N. Franklin Street
Tampa, Florida 33602
Phone (813) 223-5505
Fax (813) 223-5402

And

KENNEDY & MADONNA
Robert F. Kennedy, Jr.
Licensed only in New York
(pro hac vice to be filed)
Kevin J. Madonna
Licensed only in New York
(pro hac to be filed)

And

20

THE LAW OFFICE OF JOEL M
RUBENSTEIN
Joel M. Rubenstein
200 West 70th Street, Suite 8B
New York, NY 10023

And

NIDEL LAW, PLLC
Chris Nidel
Licensed only in Texas and District
of Columbia.
(pro hac vice to be filed)
1111 14th St., N.W., Suite 777
Washington, D.C. 20005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail and electronic email to all counsel of record on was served on this ___8___ day of May 2008, including the following:

Dennis P. Waggoner.
Hill Ward Henderson
101 East Kennedy Blvd.
Suite 3700
Tampa, Florida 33602
dwaggoner@hwhlaw.com


Eugene F. Assaf
Benjamin H. Hill, III
Andrew B. Clubok
Edwin John U
Kirkland & Ellis, LLP
655 15th Street, N.W.
Washington, D.C. 20005
eassaf@kirkland.com

Neil E. McWilliams, Jr.
Florida Bar No.: 0016174
Brian H. Barr
Florida Bar No.: 493041
J. Michael Papantonio
Florida Bar No.: 335924
Amanda R. Slevinski
Florida Bar No.: 0027041
LEVIN PAPANTONIO
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
Phone (850) 435-7074
Fax (850) 436-6074

ATTORNEYS FOR PLAINTIFF

Sher et al., vs. Raytheon Company, et al.
Proposed Class Area



Exhibit A