**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NANCY SHER, JAMES R. ABEL,
JENNIFER A. BAKER, CAROL A. CALECA,
JOURA FINK, LOUIS GIOCONDO,
BETTY L. KEY, individually and on behalf
of all others similarly situated,

      Plaintiffs,

v.                                                                                CASE NO: 8:08-cv-889-T-26TGW

RAYTHEON COMPANY,

      Defendant.

_____/

**O R D E R**

Before the Court is Defendant Raytheon Company's Motion to Stay <u>Sher</u> and

<u>Swartout</u>[1] Actions Pending Agency Action (Dkt. 20), and Plaintiffs' Memorandum in

Opposition. (Dkt. 45). After careful consideration of the motion and the applicable law,

the Court concludes that the motion should be denied.

In this action, residential property owners seek damages resulting from the toxic

plume of groundwater contaminants produced by the operations of the Raytheon facility

and former owners of the site. The facility, which has not always been owned by

Raytheon, has been used for the manufacture of electronics, communication hardware,

_____

    [1]  <u>Swartout v. Raytheon</u>, Case no. 8:08-cv-890-T-26EAJ.

and defense electronics since the 1950s.[2]  Activities alleged to have occurred at this

facility over the years include electronics assembly, hand and mass soldering, vapor

degreasing, coating, painting, chrome conversion, electroplating, metal finishing, photo-

imaging, environmental product testing, photographics, machining, electronics

engineering, and laboratory functions.[3]  The particular contaminants alleged include

dioxane, trichloroethylene (TCE), dichlorethene, and vinyl chloride.[4]  The property

changed ownership in 1957, 1974, and finally, around 1996, Raytheon acquired the

facility.[5]

In this case, Plaintiffs seek damages under theories of trespass, private nuisance,

unjust enrichment, strict liability, negligence, and medical monitoring.[6]  Raytheon desires

to stay this action and the Swartout action based on the doctrine of primary jurisdiction

and the interest of judicial economy.  Raytheon asserts that Chapter 403 of the Florida

Statutes requires that the agency, the Florida Department of Environmental Protection

(FDEP), decide the issues in this case.  Additionally, Raytheon urges a stay in view of the

---

[2]  See docket 2 at paras. 25-27.

[3]  See docket 2 at para. 27.

[4]  See docket 2 at paras. 37 & 38; docket 2 at para. 8 in Swartout v. Raytheon, Case no. 8:08-cv-890-T-26EAJ.

[5]  See docket 2 at para. 25.

[6]  In the Swartout case, the Plaintiffs seek damages based on theories negligence, strict liability pursuant to section 376.205 of the Florida Statutes, strict liability for abnormally hazardous activity, private nuisance, trespass, and medical monitoring.

process already initiated with the FDEP, which includes the recent May 30, 2008, filing

of the Addendum to the Site Assessment Report.[7]  Raytheon believes that a timely

resolution from the FDEP is forthcoming and requests a stay of no more than four to six

months.[8]  Plaintiffs disagree and cite the lengthy agency history with respect to the site.

### AUTHORITY OF FDEP

Plaintiffs correctly assert that this action, as well as the Sher action, is

predominantly one for damages suffered by one adjacent landowner at the hands of

another.  Plaintiffs further argue that the Florida legislature did not bestow upon the

FDEP the authority to determine the legal liability of the persons conducting the site

rehabilitation, which in this case is Raytheon, or to determine the damages suffered or the

amount of a fund needed for medical monitoring.  These contentions prove to be valid.

---

[7]  According to Plaintiffs, Raytheon filed the initial notification of contamination to FDEP as of July 12, 2007.  Despite the subsequent filing of the initial Assessment Report and the multiple addenda that followed thereafter, FDEP has not yet assessed the information provided by Raytheon.

[8]  This estimated period includes the 90-day period for Raytheon's preparation of a Remedial Action Plan once the FDEP has approved the adequacy of the information. Fla. Admin. Code Ann. r. 62-780.600(9)-(10).  The potential for FDEP to disapprove of the adequacy of information in the Site Assessment and all its addenda is not a part of the calculations of the time necessary for a stay.  According to Plaintiffs, the site at issue in this case has been the subject of assessment reports since as early as 1998, none of which have been approved by the FDEP to date.  At the very least, Raytheon has been required to monitor the site since 2005.

The power of the FDEP encompasses "the duty to control and prohibit pollution of air and water in accordance with the law and rules adopted and promulgated by it." See Fla. Stat. § 403.061. Section 376.30701(2), Florida Statutes, titled in part "Application of risk-based corrective action principles to contaminated sites . . . rule-making authority," provides the statutory basis for the promulgation of administrative rules by the secretary of the department. The rules must set forth the criteria for site rehabilitation programs. Chapter 62-780 of the Florida Administrative Code (FAC) "implements the risk-based corrective action provisions of Section 376.30701(2), F.S., to accomplish" the stated purpose of preventing adverse effects on human health, public safety, and the environment caused by contaminants released into the environment. Fla. Admin. Code Ann. r. 62-780.110(1). Neither the statute nor the FAC authorize the FDEP to determine the legal liability on the part of the owner of the site causing the pollution to the adjacent landowners. The FAC, in fact, specifically mandates that legal liability be sorted out according to the provisions of Chapters 376 and 403 of the Florida Statutes.[9]

---

[9]   FAC Rule 62-780.110(2) provides that "This chapter may not be used to establish whether a person is legally responsible for conducting site rehabilitation. Legal responsibility shall be determined by application of relevant provisions of Chapters 376 and 403, F.S."

Sections 376.205 and 376.313(3)[10] of the Florida Statutes create a private right of action in a property owner against the party polluting the property owner's ground water. Section 376.205 provides that "any person may bring a cause of action against a responsible party in a court of competent jurisdiction for damages . . . resulting from a discharge or other condition of pollution." Prior or concurrent administrative action is not referenced in the statute or regulations, thereby making the issues of liability and damages matters for the court and not for the agency.

## EXPERTISE OF FDEP

Setting aside that the FDEP does not possess the authority to determine damages in a private right of action against a landowner whose contaminants have traveled into adjoining property, the FDEP does hold the power to assess the degree of pollution, which is inherent in its duty to control and prohibit pollution. To the extent the FDEP therefore holds special knowledge regarding the determination of the proper site assessment and clean-up with respect to contaminants, the doctrine of primary jurisdiction may apply in certain cases to permit an agency to decide particular factual and regulatory-related issues deserving of its expertise. The following analysis supports the decision to

---

[10]   Section 376.313(3) provides as follows:
> Except as provided in s. 376.3078(3) and (11), nothing contained in ss. 376.30-376.319 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.319.

permit this action to proceed in this Court contemporaneously with the ongoing process in

the state agency.

The doctrine of primary jurisdiction generally applies to situations where the

expertise of an administrative body would benefit the courts in deciding a particular issue

or dispute because the dispute requires the exercise of knowledge gained outside the

realm of a judge's experience.  The Supreme Court[11] has described primary jurisdiction as

follows:

> [I]n cases raising issues of fact not within the conventional
> experience of judges or cases requiring the exercise of
> administrative discretion, agencies created by Congress for
> regulating the subject matter should not be passed over.  This
> is so even though the facts after they have been appraised by
> specialized competence serve as a premise for legal
> consequences to be judicially defined.  Uniformity and
> consistency in the regulation of business entrusted to a
> particular agency are secured, and the limited functions of
> review by the judiciary are more rationally exercised, by
> preliminary resort for ascertaining and interpreting the
> circumstances underlying legal issues to agencies that are
> better equipped than courts by specialization, by insight
> gained through experience, and by more flexible procedure.

---

[11]   In actions predicated on diversity jurisdiction, such as this one, this Court must
follow the substantive law of Florida, the forum state, regarding the applicability of the
primary jurisdiction doctrine.  See Kendra Oil & Gas, Inc. v. Homco, Ltd., 879 F.2d 240,
242 (7th Cir. 1989) (stating that federal courts "defer to the primary jurisdiction of a state
agency under the principles established by Erie, if state courts would defer."); Mills v.
Davis Oil Co., 11 F.3d 1298, 1304 (5th Cir. 1994) (holding that the law of primary
jurisdiction is substantive pursuant to Erie).  Nevertheless, the background of the creation
of the doctrine of primary jurisdiction is instructive in the analysis because Florida's body
of law developed from the rudiments and principles espoused by the federal courts.

Far East Conference v. United States, 342 U.S. 570, 574-75, 72 S.Ct. 492, 494-95, 96

L.Ed. 576 (1952).  Primary jurisdiction "comes into play whenever enforcement of the

claim requires the resolution of issues which, under a regulatory scheme, have been

placed within the special competence of an administrative body."  United States v.

Western Pacific Railroad Co., 352 U.S. 59, 63-65, 77 S.Ct. 161, 165-66, 1 L.Ed. 2d 126

(1956).  Application of primary jurisdiction "transfers from court to agency the power to

determine" various aspects of the commercial relationship.  Id.[12]

Florida courts recognize the doctrine of primary jurisdiction to "postpone judicial

consideration of a case to administrative determination of important questions involved

by an agency with *special competence in the area*."  See Humana of Florida, Inc. v.

McKaughan, 652 So.2d 852, 860 (Fla.Dist.Ct.App. 1995) (quoting Hill Top Developers

v. Holiday Pines Serv. Corp., 479 So.2d 368, 370 (Fla.Dist.Ct.App. 1085, review denied,

488 So.2d 68 (Fla. 1986)).  Raytheon relies primarily on Flo-Sun, Inc. v. Kirk, 783 So.2d

1029 (Fla. 2001), which describes the doctrine of primary jurisdiction as one of judicial

deference.  Flo-Sun, 783 So.2d at 1036 n.4 & 1039.  The particular facts of the Flo-Sun

case dictated that the issues reached "beyond the ordinary experience of judges and

---

[12]    See also In re Long Distance Telecomms. Litig., 831 F.2d 627, 629-230 (6th
Cir. 1987) (holding that primary jurisdiction required referral of claim regarding
reasonableness of defendant's practices to Federal Communications Commission but not
state law claims for damages under fraud theories); Tampa Interstate 75 Ltd. P'ship v.
Florida Gas Transmission Co., 294 F.Supp. 2d 1277 (M.D. Fla. 2003) (employing
primary jurisdiction because controversy involved effects of violation of Natural Gas Act
and Federal Energy Regulatory Commission's expertise was required to implement the
regulatory scheme in place).

juries" and fell within the special competence attributed to the administrative agency.

The case at hand, however, does not dictate the same result because it is distinguishable

from Flo-Sun.  Although Flo-Sun involved an environmental action, the case turned on

technical questions requiring the expertise of the agency, specifically a claim for public

nuisance.  In Flo-Sun, sugar producers had polluted the community at large by the

harvesting and processing of sugar cane by disposing of furfural in deep wells without a

permit from the FDEP.  In contrast, the instant case seeks damages for the loss of use and

decrease in property value caused by the contaminants, not the general enforcement of the

state's pollution laws in the form of an adjudication of a public nuisance.  Hence, this

Court will not defer determination of damages to the FDEP in this case.

## PARALLEL PROCEEDINGS

Raytheon contends that conducting parallel proceedings before the FDEP and this

Court would risk inconsistent results, forego the FDEP's needed expertise in the area of

pollution, and sacrifice efficiency and fairness.  As noted above, the FDEP does not

possess special competence beyond that of the court or jury with respect to the

determination of damages.  Courts and juries routinely decide issues of property value,

and this action, as alleged, does not require the special expertise of the FDEP on any

matters of pollution.  The efficiency of the progress of the agency action will not be

impeded in any way by the resolution of damages in this case.  There has been no

showing of any prejudice should this action proceed in due course.  Consequently, this

Court chooses to exercise its discretion to oversee the conduct of this case without delay.

It is therefore **ORDERED AND ADJUDGED** that the Motion to Stay <u>Sher</u> and

<u>Swartout</u> Actions (Dkt. 20) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on July 14, 2008.


       s/*Richard A. Lazzara*

      **RICHARD A. LAZZARA**
      **UNITED STATES DISTRICT JUDGE**